18196

COMMONWEALTH INVESTMENT CO. OF COLUMBIA *et al.*, Appellants, v. O. Frank THORNTON, Secretary of State of South Carolina, Respondent.

(135 S. E. (2d) 762)

*Messrs. William F. Prioleau, Jr., Frank E. Jordan, Jr.* and *Joseph D. Sapp,* all of Columbia, and *Wilcox, Hardee, Houck & Palmer,* of Florence, *for Appellants,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Grady L. Patterson, Jr., Assistant Attorney General,* of Columbia, *for Respondent,*

April 13, 1964.

LEWIS, Justice.

The appellants, twenty in number, applied between the dates of March 12 and 15, 1962 ot the Secretary of State for corporate charters or amendments to existing charters, to engage in business as industrial banks under the provisions of Section 8-232 of the 1962 Code of Laws. The Secretary of State refused to issue any of the charters or amendments to charters and this action was then instituted by the appellants for a writ of mandamus requiring their issuance. The lower court upheld the right of the Secretary of State to deny the applications and this appeal followed.

The sole question for determination is whether the Secretary of State had discretionary power to deny the application for corporate charters in the instant case.

While not necessary to a disposition of this appeal, we think that a preliminary reference should be made to the issue which formed the basis of the holding by the lower court that the Secretary of State properly denied the applications of appellants for charters to do business as industrial banks. This involves a brief review of the statutory background of this litigation.

At the time of the filing of the present applications by the appellants, Section 8-232 of the 1962 Code of Laws was

in effect. This section dealt with the interest rates which an industrial bank could lawfully charge on certain loans. Its provisions were as follows:

"Industrial banks which make personal loans on the monthly payment plan, which do not require or take real estate as collateral, which are incorporated in the State and which do not receive deposits may make interest charges as follows: On all loans of not less than ten dollars and not in excess of two hundred dollars, one and one-half per cent per month."

In 1957 the General Assembly enacted Act No. 310, now Section 8-701, *et seq.*, of the 1962 Code of Laws, which was a comprehensive statute regulating the business of lending money in amounts of $200.00 or less, including the licensing of persons engaged in such business. Section 2(b) of Act No. 310, now Section 8-702 of the 1962 Code of Laws, contained the following provision:

"This Act does not apply to any person doing business under authority of and as permitted by any law of this State or of the United States relating to banks, savings banks, *industrial banks,* trust companies, credit unions, licensed pawnbrokers or Morris Plan companies." (Emphasis added.)

Therefore, Act No. 310, regulating small loan companies, specifically exempted industrial banks from its provisions, leaving industrial banks to operate under the provisions of Section 8-232, *supra.*

However, the General Assembly in 1962 enacted Act No. 762 which repealed Section 8-232, but contained the following provision in Section 3 thereof (now Section 8-739, 1963 Supplement to Code of Laws):

"Any person heretofore [before March 17, 1962] chartered to do business as an industrial bank under the provisions of § 8-232 [of the 1952 (1962) Code] may apply for and obtain a license to do business as a small loan company. No such person shall receive deposits or use the

terms 'bank,' 'banker,' or 'banking' in connection with his business."

Since Act No. 762 repealed Section 8-232, under which industrial banks had operated, it is apparent that the General Assembly intended by Section 3 of Act No. 762 to allow such existing concerns to operate under the statutory provisions applicable to small loan companies. Section 3 is in the nature of a "grandfather clause." It provides that any person "heretofore [before March 17, 1962] chartered to do business as an industrial bank" may apply for and obtain a license as a small loan company. The appellants filed their applications for charters as industrial banks between the dates of March 12 and 15, 1962. Act No. 762, containing the grandfather clause, was signed into law by the Governor on March 17, 1962, about two days after appellants had filed their last applications.

The lower court held that the filing by appellants of their applications for charters just before Act No. 762 became law was not a coincidence; but done for the purpose of qualifying under the grandfather clause as "persons heretofore chartered to do business as an industrial bank" upon the theory that such charters would automatically entitle them to a license to engage in the small loan business, thereby circumventing the licensing provisions of Act No. 310 relating to small loan companies. Having found that the foregoing was the sole purpose of appellants in seeking the charters in this case, the lower court considered the question of the effect of the issuance of such charters upon the right of appellants to thereby engage in the small loan business. This involved a construction of the grandfather clause in Section 3 of Act No. 762. This section was construed as applying only to concerns which had actually been engaged in doing business as industrial banks and did not apply to concerns which were chartered solely to come under its provisions and which had never engaged in business as industrial banks under Section 8-232. Since it was found that the sole purpose of appellants in seeking the charters

was to thereby become entitled to engage in business as small loan companies, and that such purpose could not be obtained through merely obtaining charters as industrial banks, the lower court concluded that the Secretary of State properly denied the applications of appellants for charters.

We find no reason under the facts of this case to question the soundness of the conclusion of the lower court that appellants would not become entitled to the rights conferred by Section 3 of Act No. 762 simply by receiving charters as industrial banks. Certainly, Section 3 was not intended, and cannot be used, solely as a vehicle for circumventing the licensing and control provisions of the Act regulating the small loan business. However, the stipulation of facts upon which this case was tried contained nothing upon which the conclusion could be safely reached that the sole purpose of appellants in applying for charters as industrial banks was to come within the provisions of Section 3 of Act No. 762, which we have referred to as a "grandfather clause." Appellants did not apply for charters to engage in the small loan business, but only applied for charters as industrial banks. Questions concerning the rights conferred by such charters and the nature of the business which may be engaged in thereunder were not encompassed within the issues before the lower court and, therefore, are not before us.

As heretofore stated, the sole issue presented under the stipulation of facts was whether the Secretary of State had discretionary power to deny the application for charters to do business as industrial banks.

The authority of the Secretary of State to charter industrial banks at the time of the filing of the applications herein is not questioned.

The statutes, then in effect, governing the application for, and issuance of, charters for business corporations are contained in Sections 12-51 through 12-85 of the 1962 Code of Laws. Under these provisions, when persons desiring to form a business corporation fulfilled the preliminary statu-

tory requirements, they filed a declaration with the Secretary of State, setting forth certain required information. Upon the filing of this declaration, the duty of the Secretary of State relative to the issuance of a charter is clearly set forth in Section 12-59, as follows:

"Upon the filing of the declaration and the receipt of the charter fee the Secretary of State *shall issue* to the incorporators a certified copy of their declaration which shall constitute the charter of the corporation authorizing it to begin business under the name and for the purpose indicated in the written declaration." (Emphasis added.)

The foregoing section does not leave the issuance of the corporate charter to the discretion of the Secretary of State, once the preliminary statutory requirements have been met. In such event, the statute plainly provides that he *shall issue* a certified copy of the declaration which shall constitute the charter of the corporation. It has been stipulated by the parties that all of the applications for charters in the instant case were "in due and proper form as provided by the Statutes of this State." Since the applications met all of the requirements of the statutes, the Secretary of State was required to issue the charters. The lower court was in error in not so holding.

It was stipulated that, if the determination by the court was favorable to appellants, the charters and amendments would be issued as of the dates of the original applications. Accordingly, the cause is remanded to the lower court for the entry of orders requiring the issuance of the charters and amendments to appellants in conformity with the views expressed herein.

Reversed and remanded.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.